# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DAVEON LEMARNCE CATHEY, | ) |
| Plaintiff, | ) |
| v. | ) 2:12-cv-4115-RBP-SGC |
| OFFICER EUGENE PATRICK, et al., | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Daveon Lemarnce Cathey,[1] hereinafter referred to as plaintiff, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States have been abridged during his incarceration at Shelby County Correctional Facility in Columbiana, Alabama. Plaintiff names as defendants Shift Supervisor Sgt. Timothy Laatsch, Lt. Blackerby, Sgt. Keith English, Officer Patrick Monk, Officer Green, Officer Hogan, Officer Woods and Nurse Kaye. Plaintiff seeks a jury trial, monetary damages and costs. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

### I.     Legal Framework and Relevant Procedural History

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against officers or

---

[1] Plaintiff listed his name as David Lemarnce Cathey on his application to proceed *in forma pauperis*. (Doc. 2).

1

employees of governmental entities and to dismiss the complaint or any portion of the complaint that it finds frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Thus, under § 1915A, the court may *sua sponte* dismiss a prisoner's complaint prior to service. Nevertheless, in order to protect a *pro se* prisoner's right of access to the courts, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

In this case, Plaintiff filed a motion to amend his amended complaint in which he requests permission to correct the defendants' names, the type of relief he seeks and the capacity in which he wishes to sue the defendants. (Doc. 16). On March 26, 2014, the court granted plaintiff's motion to amend. (Doc. 21). That order was mailed to plaintiff at the Shelby County Jail, the address provided by him, but it was returned as undeliverable. At that time, the Alabama Department of Corrections' website listed an Alabama State Inmate number (AIS#) for a Daveon Cathey at Autauga County Jail that was different from the AIS# provided by the plaintiff, Daveon Lemarnce Cathey. The court sent an order directed to the plaintiff at the Autauga County Jail, along with instructions to the plaintiff that it was his responsibility to provide the court with his correct address within fifteen (15) days of the entry date of the order. (Doc. 23). Moreover, the court advised Plaintiff that if it did not receive a response within the time period allotted, the action could be dismissed, either because the plaintiff had failed to comply with the order, or because the individual to whom the order was sent at Autauga County Jail was not plaintiff David Lemarnce Cathey. This order was returned as undeliverable as well.

Presently, the Department of Corrections' website shows that a Daveon Lemarnce Cathey,

AIS# 293691,[2] is currently housed at Kilby Correctional Facility in Mt. Meigs, Alabama. *See* http://www.doc.state.al.us/. Although the AIS# provided by Cathey and the Department of Corrections are different, the court will assume, unless otherwise informed, that Kilby Correctional Facility is the current address for plaintiff Daveon Lemarnce Cathey. No further attempts shall be made no locate the plaintiff after this report and recommendation if it is returned as undeliverable.

This court has decided to screen the plaintiff's complaint pursuant to 28 U.S.C. §1915A without the benefit of plaintiff's amendment to correct the names of the defendants subject to suit, the type of relief he seeks and the capacity in which he desires to sue the defendants. Even if plaintiff were to make these requested corrections, they could not change or alter the recommendations made in this report with regard to the claims that are due to be dismissed for failure to state a claim upon which relief may be granted.

## II.     Factual Allegations

Plaintiff complains that on October 4, 2012, he "left segregation to have a visit on the moniters [(sic)] in B-3 pod." (Doc. 12 at 3 "Amended Complaint"). Plaintiff does not reveal why he was placed in segregation or the type of segregated housing in which he was living. When he tried to return to segregation, plaintiff was informed that Sgt. Laatsch had decided that he would remain in B-3 pod. (*Id.*). Plaintiff wanted to remain in segregation and between October 5 and October 11, 2012, filed several grievances and request forms pertaining to this desire. (*Id.* at 3-4). As the reason for his housing request, plaintiff asserts only that it was "because of his safety and others," with no further detail. (*Id.* at 4-5). On October 11, 2013, Sgt. Laatsch and Lt. Blackerby

---

[2] Plaintiff listed his AIS# as 276583, but the Department of Corrections has responded that this number is currently assigned to female inmate of a different name.

denied his requests. (*Id.* at 5).

On October 13, 2012, plaintiff was talking on the telephone with his mother while defendants Officer Monk, Officer Green and Nurse Kaye were conducting pill call at the "B-3 pod door." (*Id.*). Monk told plaintiff to put a shirt on, so plaintiff placed his mother on hold and went to his cell to comply with the order. (*Id.*). As he exited his cell, defendant Kaye "said a foul comment about" his shirt. (*Id.*). Plaintiff shook his head, smiled, and sat back down to speak with mother. (*Id.*).

As plaintiff told his mother what defendant Kaye had said, Monk told him to stop talking s--t or Monk would come in and handle him. (*Id.*). Plaintiff responded, "Whatever, you can't do nothing." (*Id.*). Defendants Monk and Green then hung plaintiff's phone up. (*Id.*). As plaintiff got up and started back to his cell Monk "started walking up close" behind him, and plaintiff said, "'I didn't do anything and that's f--ked up.'" (*Id.*). Monk said, "'there's nothing but air and opportunity,' and [plaintiff] looked at him and waved him off." (*Id.*).

Once plaintiff reached his cell, Monk stood in the doorway told plaintiff hand over his mat. (*Id.*). Plaintiff responded by telling Monk and Green that he hadn't done anything, whereupon both officers screamed at plaintiff to give them his mat. (*Id.*). Plaintiff then took his books off of his mat and told the officers to get it. (*Id.* at 7). Monk again demanded plaintiff hand him the mat and again plaintiff told Monk to get it. (*Id.*).

Monk then pulled out his mace and continually sprayed plaintiff in the face "so [plaintiff] balled up beside the toilet." (*Id.*). When the spraying continued, plaintiff grabbed him blanket off the bed and "covered himself." (*Id.*). Monk instructed plaintiff to get on his hands and knees and put his hands behind his back, and plaintiff obeyed. (*Id.*). As Monk and Green walked plaintiff out

4

his cell, he was informed that he was being taken to a padded cell. (*Id.*). Plaintiff insisted he had not done anything and then "Officer Hogan yelled 'he spit on me.'" (*Id.*). At that point, Monk and Green threw plaintiff on the ground. (*Id.*). Green was on plaintiff's back "jabbing" his "face to the ground" as Hogan pulled plaintiff's right arm. (*Id.*). Officers Monk and Laatsch twisted and pulled his legs. (*Id.*).

Defendant Green was also hitting plaintiff's back and shoulder, and stated that plaintiff had bitten his and lip and was bleeding. (*Id.*). "Sgt. English told Officer Woods to get a face mask," and Woods put the mask over plaintiff's face. (*Id.*). Plaintiff informed English that he was going to sue, but English stated that he did not care and that plaintiff wasn't the only one. (*Id.* at 6). Plaintiff was then picked up, taken down a hallway and pushed into a chair. (*Id.*). Hogan then put plaintiff in a choke hold from behind while Woods, Monk and Green hit plaintiff in his stomach, ribs and legs. (*Id.*). Plaintiff was then taken to a padded cell. (*Id.*). The officers left plaintiff in the cell strapped in a chair. (*Id.*).

Two days later, on October 15, 2014, plaintiff filed a "request/grievance" form concerning his pain and bruises and asked for pain medicine. (*Id.*). Although the "medical staff" did a body chart and admitted he had bruises, he was not given pain medication. (*Id.*).

**III.   Discussion**

Plaintiff's claims are addressed in turn, below.

    A.   Due Process and Failure to Protect[3]

Given the liberal pleading rules governing *pro se* prisoner petitions, it appears that plaintiff

---

[3] It is unknown whether plaintiff was a pre-trial detainee or convicted prisoner at the time of the events made the basis of his complaint.

5

is alleging that defendants Laatsch and Blackerby violated his right to due process of law and the proscription against cruel and unusual punishment when they refused to allow him to remain in segregation as he requested. With regard to the due process question, "the Due Process Clause in and of itself [does not] protect a duly convicted prisoner against transfer from one institution to another within the state system." *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Sandin v. Connor*, 515 U.S. 472, 483 (1995).

Additionally, "[i]nmates have neither a protectable property nor liberty interest in custodial classification." *Mikeska v. Collins,* 900 F.2d 833, 836 (5th Cir. 1990). A change in level of custody within a prison system does not infringe upon or implicate a liberty interest within the meaning of the due process clause. *United States v. Williams,* 787 F.2d 1182, 1184 n.3 (7th Cir. 1986) (citing *Moody v. Daggett,* 429 U.S. 78, 87-89 (1976) and *Meachum v. Fano*, 427 U.S. 215 (1976)).

If plaintiff was a pre-trial detainee when the defendants refused to allow him to remain in segregation, he still has not stated a due process claim. In *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979), the Supreme Court considered the rights of pre-trial detainees and stated that the government may detain a person charged with a criminal offense "to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment or otherwise violate the Constitution." The Court pointed out that "if a condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' " (*Id*. at 539). Maintaining security and order in the detention facility is clearly a legitimate governmental interest. (*Id*. at 540). Plaintiff has alleged no facts that would support a contention that his placement in B-3 Pod, as opposed to segregation, was intended to or did amount to any sort of punishment, or that the

6

defendants' decision to place him in B-3 Pod was for any reason other than ordinary prison administration.

Since plaintiff has no liberty interest in remaining in a particular institution or classification and his placement in B-pod did not amount to punishment, he has failed to establish a claim pursuant to the Fourteenth Amendment's Due Process Clause to the United States Constitution. Accordingly, this claim is due to be dismissed.

Moreover, to the extent plaintiff is attempting to assert that defendants Laatsch and Blacker failed to protect him from harm when they refused to allow him to remain in segregation, his complaint is due to be dismissed. Although prison officials have a duty to protect inmates from violence by other prisoners, they are not the guarantors of a prisoner's safety. *Morgan v. Toombs Co., Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005). The Eighth Amendment[4] is violated only when a prisoner is incarcerated under conditions which expose him to a "substantial risk of serious harm" and only when prison officials are "deliberately indifferent" to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's interest or safety will not

---

[4] If Cathey was a pre-trial detainee, the failure to protect claim is

> governed by the Fourteenth Amendment's Due Process Clause, instead of the Eighth Amendment's Cruel and Unusual Punishments Clause, which applies to such claims by convicted prisoners. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). But it makes no difference whether [Cathey] was a pretrial detainee or a convicted prisoner because "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving . . . pre-trial detainees." *Id.*

*Bozeman v. Orum*, 422 F.3d 1265, 1271 (11th Cir. 2005) (alteration supplied).

7

support an Eighth Amendment claim. *Id*. at 835. Prison officials cannot be liable under the Eighth Amendment unless they know of and disregard an excessive or substantial risk to inmate health or safety. *Id*. at 837.

When viewed in light of the above parameters, it is clear that the plaintiff's complaint fails to allege facts sufficient to state a claim under the Eighth Amendment. He cites no specific incidents that would have put defendants Laatsch and Blackerby on notice that he faced a "substantial risk of serious harm" from anything or anyone or that he had notified prison officials of a <u>specific</u> fear of harm if he was not allowed to remain in segregation. The plaintiff has therefore failed to plead any facts that suggest Laatsch and Blackerby were aware of events or circumstances from which they could have drawn the inference that plaintiff faced any particular danger and that there was a "strong likelihood" that the plaintiff would be injured if he was housed in B-3 Pod. For the foregoing reasons, plaintiff has failed to state any Eighth and Fourteenth Amendment claims against defendants Laatsch and Blackerby related to his removal from segregation.

  B. <u>Excessive Force</u>

Plaintiff names Sgt. Laatsch, Sgt. English, Officer Monk, Officer Green, Officer Hogan and Officer Woods as defendants in his pursuit of an excessive force claim against them. The Eighth Amendment prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

8

cause harm." *Hudson*, 503 U.S. at 6-7. In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 9 (citations omitted).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive. These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id*. at 7; *see Hewett v. Jarrad*, 786 F.2d 1080, 1085 (11th Cir. 1986).

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

In light of plaintiff's allegations, Sgt. Laatsch, Sgt. English, Officer Monk, Officer Green,

9

Officer Hogan and Officer Woods should be directed to respond to the excessive force allegations against them.

1.  *Nurse Kaye*

Plaintiff's only allegation against Nurse Kaye is that she made a "foul comment" about his shirt. (Doc. 12 at 5). This allegation is insufficient to state a constitutional claim against Kaye, and it is due to be dismissed.

2.  *Medical Care*

Plaintiff alleges that on October 15, 2012, two days after the incident, he submitted a medical request concerning the pain and bruises that he suffered as a result of the October 13, 2012, altercation with the defendant prison officials. (*Id.* at 6). He was seen the same day by "medical staff" who "did a body chart on my body and admitted that I have bruises and gave me no pain medication." (*Id.*). He does not identify by name any member of the medical staff.

In any event, medical treatment of prisoners violates the Eighth Amendment only when it is so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Therefore, negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment. *Estelle*, 429 U.S. at 106; *McElligot v. Foley*, 182 F.3d 1248 (11th Cir. 1999). Likewise, a mere difference of opinion between an inmate and the prison medical staff as to treatment or diagnosis will not, alone, give rise to a cause of action under the Eighth Amendment. *Harris*, supra at 1505.

In the present case, it cannot be said that the plaintiff has pled facts sufficient to show that any one of the "medical staff" was deliberately indifferent to a serious medical need. The plaintiff has alleged no facts which show that any of the defendants engaged in acts or omissions which were so "grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, supra at 1505. Plaintiff waited two days to even request medical attention for the alleged assault. He was seen by the medical staff on the same day he requested assistance and his bruises were recorded. The plaintiff's chief complaint is that he was not given pain medication at the time of his visit. However, he presents no facts to show what symptoms he displayed and why pain medication was necessary under the circumstances such that this court could conclude that he was suffering from a serious medical need.

The plaintiff's allegations are also insufficient to establish the Eighth Amendment's <u>subjective</u> criteria with respect to the medical staff. In other words, he has failed to specifically allege how any one of the medical staff acted intentionally or recklessly to deny medical care or acted with "an attitude of deliberate indifference" toward his alleged medical problem. *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). The plaintiff can assert a valid constitutional claim only if he can show that the staff possessed a "subjective awareness" of facts signaling a serious medical need *and* that were deliberately indifferent, as opposed to merely negligent, in failing to address that need. In this instance, plaintiff's complaint displays neither a serious medical need or deliberate indifference to it. Therefore, plaintiff has failed to allege a constitutional claim upon which relief can be granted in connection with allegations that he was not provided pain medication.

### RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Accordingly, for the reasons stated above, the magistrate judge **RECOMMENDS** that

plaintiff's due process and failure to protect claims against defendants Laatsch and Blackerby, his allegation that Nurse Kaye insulted his shirt, and his medical care claim against the "medical staff" be **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and/or (2).  The magistrate judge further **RECOMMENDS** that the excessive force claims against Sgt. Laatsch, Sgt. English, Officer Monk, Officer Green, Officer Hogan and Officer Woods be referred to the undersigned magistrate judge for further proceedings.

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  **Any objections to the failure of the magistrate judge to address any contention raised in the petition also must be included.**  Failure to do so will bar any later challenge or review of the **factual findings or legal conclusions** of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S. Ct. 899, 88 L. Ed. 2d 933 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).  In order to challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed

before the magistrate judge, making his own determination on the basis of that record. The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

Plaintiff is **DIRECTED** to amend his amended complaint to correct the names of and capacity in which he desires to sue the defendants as well as the type of relief he seeks within fourteen (14) days of the entry date of this report and recommendation.

Plaintiff is **FURTHER DIRECTED** to inform the court of his correct AIS# and address fourteen (14) days of the entry date of this report and recommendation. If the report and recommendation is returned as undeliverable because plaintiff is not at the address, this court **RECOMMENDS** that the case be **DISMISSED WITHOUT PREJUDICE** for lack of prosecution.

The Clerk is **DIRECTED** to serve a copy of the Order granting his motion to amend the complaint (doc. 21) and this report and recommendation to **Daveon Lemarnce Cathey, AIS #293691, Kilby Correctional Facility, P.O. Box 150, Mt. Meigs, Alabama 36057.**

**DONE** this 15th day of May, 2014.

_Staci G. Cornelius_
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE